235 So.2d 723 (1970)
In re the INTEGRATION RULE OF THE FLORIDA BAR.
No. 39272.
Supreme Court of Florida.
June 3, 1970.
Robert M. Ervin, Tallahassee, Thomas C. MacDonald, Jr., Tampa, Patrick G. Emmanuel, Pensacola, Chesterfield H. Smith, Bartow, and Fletcher G. Rush, Orlando, for The Florida Bar, petitioners.
J. Robert McClure, Jr., of McClure, Wigginton & McClure, Tallahassee, for The Tallahassee Bar Ass'n.
Robert D. Schram, Miami, for American Civil Liberties Union, and Bernard J. Penn, Pensacola, in opposition to Petition.
PER CURIAM.
This cause is before the Court on the Petition of The Florida Bar for amendment to the Integration Rule, the objections filed thereto, the suggested amendments thereof appearing in the record and the resolutions endorsing the proposed amendments of local bar associations. After argument by all interested parties, and consideration of the record and briefs, the Court finds that due notice has been given as required by Article XIII of the Integration Rule, 32 F.S.A., and that copies of the Petition and its exhibits have been timely mailed to each member of The Florida Bar. It is thereupon,
Ordered as follows:
1. The objections of Bernard J. Penn to such proposed amendments are denied.
2. The objections of the American Civil Liberties Union to such proposed amendments are denied.
3. The words "a majority of" contained in the fourth sentence of DR 2-102(A) (4), as the same appears in the "Revised Appendix to Brief of The Florida Bar" filed March 2, 1970, are disapproved; in lieu of such words, the words "a substantial amount" shall be inserted.
4. The following language contained in DR 2-108(B), as the same appears in the "Revised Appendix to Brief of The Florida Bar" filed March 2, 1970, viz:
"(B) * * *, but he may enter into an agreement not to accept any other representation arising out of a transaction or event embraced in the subject matter of the controversy or suit thus settled."
is disapproved and hereby stricken. The comma after the word "law", immediately preceding the above quoted language is stricken and a period inserted in lieu thereof.
5. The following language of EC 7-29, as the same appears in the "Revised Appendix to Brief of The Florida Bar" filed March 2, 1970, viz:
"EC 7-29 * * * After the trial, communication by a lawyer with jurors is *724 permitted so long as he refrains from asking questions or making comments that tend to harass or embarrass the juror or to influence actions of the juror in future cases. Were a lawyer to be prohibited from communicating after trial with a juror, he could not ascertain if the verdict might be subject to legal challenge, in which event the invalidity of a verdict might go undetected. When an extrajudicial communication by a lawyer with a juror is permitted by law, it should be made considerately and with deference to the personal feelings of the juror."
is stricken and in lieu thereof the following language is inserted, viz:
"All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing.
"Both before and during the trial, a lawyer should avoid conversing or otherwise communicating with a juror on any subject, whether pertaining to the case or not. Subject to any limitations imposed by law it is a lawyer's right, after the jury has been discharged, to interview the jurors solely to determine whether their verdict is subject to any legal challenge provided he has reason to believe that ground for such challenge may exist, and further provided that prior to any such interview made by him or under his direction, he shall file in the cause, and deliver a copy to the trial judge and opposing counsel, a notice of intention to interview such juror or jurors setting forth in such notice the name of each such juror. The scope of the interview should be restricted and caution should be used to avoid embarrassment to any juror and to avoid influencing his action in any subsequent jury service."
6. The following language in DR 7-108 (D), as the same appears in the "Revised Appendix to Brief of The Florida Bar" filed March 2, 1970, viz:
"(D) * * *, in which event he shall confine his communication to matters pertinent thereto and shall refrain from asking questions or making comments calculated merely to harass or embarass the jurors or to influence his actions in future jury service."
is stricken and in lieu thereof the following language is inserted, viz:
"(D) * * *, in which event he shall scrupulously follow the procedure described and provided for in EC 7-29 hereof."
7. In all other respects this Court adopts the Code of Professional Responsibility, including the Preamble and Preliminary Statements, Canons, Ethical Considerations, Disciplinary Rules, and Definitions, as the same appears in the "Revised Appendix to Brief of The Florida Bar" filed March 2, 1970.
8. Article X of the Integration Rule of The Florida Bar is amended to read:

ARTICLE X

CODE OF PROFESSIONAL RESPONSIBILITY AND CANONS OF ETHICS FOR JUDGES
The Code of Professional Responsibility promulgated by the order of the Supreme Court of Florida entered (_____________ ____________) and the Canons of Ethics for Judges promulgated by the Supreme Court of Florida on January 27, 1941, as thereafter amended shall constitute a code of ethics applicable to the members of The Florida Bar, together with such amendments to the same as may hereafter be expressly adopted by the Court.
*725 9. The following Article XIX is added to the Integration Rule of The Florida Bar:

ARTICLE XIX

GROUP LEGAL SERVICES
1. No member of The Florida Bar shall furnish or provide legal services under any arrangement with an organization which shall recommend, furnish, or pay for legal services pursuant to Disciplinary Rule 2-103 (D) (5) of the Code of Professional Responsibility unless such organization shall have first applied to and secured approval of such arrangement from the Board of Governors of The Florida Bar; provided, however, that any such organization recommending, furnishing, or paying for such services as of the effective date of this article shall have six (6) months from such date within which to apply to and secure approval of the Board of Governors for the continuance of such service.
2. Every application for approval hereunder shall affirmatively demonstrate compliance with each requirement of Disciplinary Rule 2-103(D) (5), and shall further affirmatively demonstrate that each lawyer performing or to perform legal services in connection with such application shall execute an agreement with the organization, which agreement shall be filed with the Board of Governors of The Florida Bar and which shall describe the general nature of the legal services to be performed, and provide that:
(a) Any person eligible to receive legal services under the arrangement may obtain legal services independently of the arrangement from any attorney of his choice;
(b) No unlicensed person will provide legal services under the arrangement;
(c) Neither the organization nor any member thereof shall interfere or attempt to interfere with the lawyer's independent exercise of his professional judgment;
(d) The person to whom the legal services are rendered, and not the organization, is the client of the lawyer;
(e) In providing legal services, the lawyer must comply with the Code of Professional Responsibility, including without limitation those provisions relating to the setting, charging, and collecting of fees, and relating to advertising;
(f) Any publicity disseminated by the organization to its members will not describe the lawyer beyond giving his name, address and telephone number, and such other information as may be required to facilitate the access of a member to the services of the lawyer;
(g) Any publicity disseminated by the organization to non-members will not identify the lawyer by name;
(h) No organization shall advertise or otherwise make representations to the public or its members regarding the cost of legal services which may be provided by attorneys serving members of the organization. The cost of legal services depends upon varying conditions and circumstances which preclude determination of the fee to be charged for a required service prior to the time the attorney is retained;
(i) The agreement will be terminated in the event of any substantial violation of the provisions of the Code of Professional Responsibility or the Integration Rule or the bylaws promulgated thereunder.
3. A lawyer shall not furnish legal services in connection with any arrangement approved hereunder if he participated in any manner not justified by a prior relationship with the organization in promoting either the creation of the organization or the establishment of any arrangement for which approval is or might be sought hereunder, or if he sought his own employment, retainer, or recommendation by the organization.
4. The Board of Governors of The Florida Bar may, upon good cause shown, including *726 violation of the Code of Professional Responsibility or of the Integration Rule or the bylaws promulgated thereunder, revoke the approval granted to any organization to recommend, furnish, or pay for legal services pursuant to Disciplinary Rule 2-103(D) (5), or revoke the authority of a member of The Florida Bar to participate therein.
5. The Board of Governors may adopt such supplementary bylaws as it may deem desirable relating to the establishment, approval, operation and revocation of approval of arrangements hereunder not inconsistent herewith.
4. This Order shall take effect Oct. 1, 1970; provided that the adoption herein of amended Article X shall in no way affect the applicability of any rules of professional conduct previously promulgated by this Court to acts or omissions occurring prior to such effective date.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW, THORNAL, CARLTON, ADKINS and BOYD, JJ., concur.